UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JEFFREY K PLASKETT,<br>    Plaintiff,<br>v.<br>RYAN D. MCCARTHY,<br>    Defendant. | Case No. 5:18-cv-06466-EJD<br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br>Re: Dkt. No. 21 |

Plaintiff Jeffrey K. Plaskett ("Plaintiff") filed this lawsuit against Defendant, Dr. Mark Esper, former Secretary of the United States Department of the Army ("Defendant"),[1] bringing two causes of action. Compl. ¶ 1. Plaintiff seeks two Writs of Mandamus: (1) a Writ of Mandamus ordering Defendant to pay Plaintiff back wages allegedly owed under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361; and (2) a Writ of Mandamus ordering payment of monetary sanctions in the form of attorney's fees. *Id.* at ¶¶ 30-37. Defendant moves to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Dkt. No. 21. For the reasons below, Defendant's motion is GRANTED.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Ryan D. McCarthy, Acting United States Secretary of the Army, is automatically substituted for his predecessor in office, Mark Esper. Dkt. No. 33.

Case No.: 5:18-cv-06466-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
1

## I. BACKGROUND

For approximately four years, Plaintiff worked for the U.S. Army at Fort Hunter Liggett in Monterey County, California, in a term position that expired on September 30, 2010. *See id.* at ¶¶ 3, 8; *see also id.* at Ex. A. Around this time, Plaintiff applied for a permanent position with the Army as an Engineering Equipment Operator. Compl. ¶ 4; *id.* at Ex. A. But, the Army did not select Plaintiff for the permanent position. *Id.* In November 2010, Plaintiff, who was fifty-five years old when he applied for the permanent position, filed an administrative complaint which alleged age discrimination. Decl. of Mr. D. Michael Tucker ("Tucker Decl.") ¶ 5.

In October 2012, an Administrative Judge ("AJ") for the Equal Employment Opportunity Commission ("EEOC") (also referred to as "Commission") issued a decision finding that the Army committed age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") when the Army did not select Plaintiff for the permanent position. Compl. ¶¶ 1, 9; Tucker Decl. ¶ 6. The AJ ordered the Army: (1) to hire Plaintiff into an equivalent position; and (2) to "award back pay (including pay increases) with interest, less interim earnings, and all benefits the complainant would have received if he had been hired on October 24, 2010, through his entry on duty date." Compl. ¶¶ 4, 10; *id.* at Ex. A. In a separate order, the AJ ordered the Army to pay $7,012.50 in sanctions "for the agency's failure to timely and fully produce discovery and comply with [the AJ's] orders." Compl. ¶ 22; *id.* at Ex. H.

In December 2012, the Army notified Plaintiff's counsel, Ms. Wendy Musell, that pursuant to the AJ's order, the Army would hire Plaintiff into an equivalent position and pay back pay. Compl. Ex. B. But, the Army stated that it would not comply with the sanctions order because the Army was "bound to follow" guidance from the Office of Legal Counsel at the U.S. Department of Justice, which "expressly opined that there has been no express waiver of sovereign immunity that would authorize the payment of sanctions in administrative cases before the EEOC." *Id.*

From December 2012 to April 2013, the Army provided the Defense Finance and Accounting Service ("DFAS") with documentation in an effort to get Plaintiff the ordered back pay. Tucker Decl. ¶ 7. In April 2013, a DFAS pay technician confirmed that DFAS had paid the

Case No.: 5:18-cv-06466-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
2

ordered back pay to Plaintiff. *Id.* at Ex. 4.

Over a year later, in May 2014, Plaintiff contested the amount of back pay he had received, "claim[ing] that his private employment income offset should not have included what he described as moonlighting hours." Tucker Decl. ¶ 8. Plaintiff claimed this income was non-deductible based on a regulatory exception which provides that moonlighting pay[2] – or pay earned from dual employment – is not deductible. At this time, Mr. Douglas Hales, an Army contract attorney, also assumed legal representation of the Army in this matter. *Id.* at ¶ 2.

In late June 2014, Plaintiff provided the Army with "what appeared to be time cards" from 2012 and 2013 to support Plaintiff's claim for the disputed back pay. *Id.* at ¶ 9; *id.* at Exs. 7-10.

In July 2014, Mr. Hales stated in an internal email to Ms. Carol Lange, an Army Human Resources Specialist, that Plaintiff's time cards supported Plaintiff's request for the disputed back pay. Tucker Decl. ¶ 9; *id.* at Ex. 11. Ms. Musell was not copied on this email. Accordingly, Mr. Hales asked Ms. Lange to submit the time cards and a request for additional back pay to DFAS. *Id.* Specifically, Mr. Hales stated in the email:

> I went over the supporting documents with Mr. Plaskett and the missing timecards for H&N are covered by the calendars signed by their book keeper | [sic] because they don't keep daily timecards. Therefore, his request is backed up by documentation from his employers and we can send the request up to DFAS with the document requesting that he be reimbursed for pay deducted from his earnings from 'moonlighting' on non-duty days.

*Id.*

In July, August, September, October, and November 2014, Mr. Hales contacted Ms. Casey Prunier, the DFAS pay technician whom Mr. Hales believed was working on the back pay issue. Tucker Decl. ¶ 11; *id.* at Ex. 12. In December 2014, Mr. Hales contacted another DFAS employee. *Id.* There is no record of DFAS ever responding to Mr. Hales. *Id.*

---

[2] Black's Law Dictionary defines moonlighting as "[t]he fact, condition, or practice of working at a second job after the hours of a regular job. — Also termed *dual employment*; *multiple job-holding*." Black's Law Dictionary (11th ed. 2019).

Case No.: 5:18-cv-06466-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
3

In January 2015, Mr. Hales emailed Plaintiff, confirming that he had forwarded the time cards he had submitted to DFAS. Tucker Decl. Ex. 5. Mr. Hales stated:

> I completed my review of your request for the additional back pay on 30 July 2014. The time cards were forwarded to Casey Prunier at DFAS on 4 August 2014. My email requests for response from Ms. Prunier are attached. I also called Ms. Prunier on 30 July, 13 August, 18 August, 29 September, 21 October, 26 November and Allen Campbell on 12 December. The last time I spoke to Ms. Prunier personally was 19 August 2014.
>
> I have heard that DFAS is very slow to respond to back pay requests, generally. Hopefully they will get back on track, but I don't have any information on when that might be.

*Id.*

In late February 2015, Mr. Hales asked a newly hired Army lawyer, D. Michael Tucker, to determine the status of the back pay request. Tucker Decl. ¶¶ 1, 10. Mr. Tucker contacted Mr. Brian Dougherty, who had replaced Ms. Prunier at DFAS. *Id.* at ¶ 11. Mr. Dougherty then referred Mr. Tucker to his supervisor, Ms. Sandra Atwood. *Id.*

In early April 2015, Ms. Atwood searched for an open remedy ticket regarding Plaintiff's request for additional back pay, but was unable to locate one. *Id.* Ms. Lange submitted a new remedy ticket to DFAS by the end of the month. *Id.*

In April 2015, Plaintiff submitted an appeal to the EEOC, claiming that the Army had not complied with the entirety of the EEOC's December 3, 2012 order because the Army allegedly owed Plaintiff back pay with interest in the amount of $21,020.01 and "attorneys' fees and costs related to its failure to fully pay back pay with interest and to comply with the EEOC's Orders." Compl. ¶ 11; *see* Tucker Decl. ¶ 12. The Army submitted a required Response, asking the EEOC to "deny Complainant's request and enforcement order and deny his request for referral to the Office of Special Counsel for investigation and review." Tucker Decl. ¶ 12; *id.* at Ex. 12. The Army explained that Plaintiff's documentation did not contain timecards to substantiate the actual days worked from one of his employers, but that the Army "approved" Plaintiff's request based on a letter from Plaintiff's employer confirming the schedule. *Id.* The Army further explained that Ms. Lange then submitted the back pay request to DFAS in July 2014. *Id.* The Army indicated

Case No.: 5:18-cv-06466-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
4

that short staffing and Plaintiff's dispute of the back pay calculation over a year after receiving payment, caused delays in processing Plaintiff's request. *See id.* The Army stated: "The Agency acted diligently with its available resources and it believes it has identified the cause of the delay and that the additional back pay should be forthcoming." Tucker Decl. ¶ 12; *id.* at Ex. 12.

In May 2015, DFAS responded to Ms. Lange's remedy ticket. Tucker Decl. ¶ 13. DFAS informed the Army that, per moonlighting back pay regulations, the Department needed certain documentation verifying that Plaintiff performed moonlighting work prior to his separation from the Army in 2010 in order to process the request for additional back pay. *Id.* According to Mr. Tucker, "[T]his was the first time anyone had pointed out this regulatory requirement" for documentation verifying moonlighting work prior to Plaintiff's separation date. *Id.* Mr. Hales then informed Ms. Musell of DFAS' position and "offered that paychecks earned from other employers during [Plaintiff's] period of federal employment would be sufficient." *Id.* at ¶ 14. Ms. Musell replied: "This issue is resolved. The Army admitted it was owed. This was confirmed in the OFO [EEOC Office of Federal Operations] appeal. It was confirmed in writing. All that remains is the Army making good on payment." *Id.* at Ex. 17. Mr. Hales replied that he read her response as a refusal to provide proof of dual employment. *Id.* He stated:

> Fort Hunter Liggett does not have the authority to pay Mr. Plaskett. If FHL [Fort Hunter Liggett] had that authority, Mr. Plaskett would have been paid last summer. Unfortunately, it would have made a mistake to pay him because he did not provide proof of "earnings from outside employment the employee already had before the period of wrongful suspension or separation", as required by FMR [Financial Management Regulation] Vol. 8, Ch. 6 Sec. 060505 Part C . . .

*Id.*

In September 2015, Mr. Hales prepared a document titled "Agency's Supplemental Response to Complainant's Petition for Enforcement of Final Decision and Sanctions." Tucker Decl. ¶ 15; *id.* at Ex. 18. Mr. Hales stated that DFAS denied Plaintiff's request for back pay because "Mr. Plaskett's proof of 'moonlighting' earnings only covered the period after he was working for the Agency. He did not provide proof that he was already working for another

Case No.: 5:18-cv-06466-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
5

employer before he left his position with the Agency." *Id.* It is uncertain whether the EEOC received the Supplemental Response. *Id.* That same month, Mr. Hales ended his legal contract work for the Army, and Mr. Tucker began representing the Army for the back pay dispute. Tucker Decl. ¶ 2. However, ". . . the sanctions question was being handled at the Department of the Army level of command." *Id.* at ¶ 4.

In July 2016, Ms. Musell sent a letter to the Director of the Equal Employment Opportunity Compliance and Complaints Review, the Equal Employment Opportunity Director at Fort Hunter Liggett, the Equal Employment Opportunity Director at the Army Reserve Headquarters, and the Legal Department at Fort Hunter Liggett. *Id.* at Ex. 30. The letter stated: "Mr. Plaskett demands that full compliance of the sanctions and back pay be made by July 22, 2016, or he will commence with legal action." *Id.* The EEOC docketed Plaintiff's Petition for Enforcement No. 0420160037 regarding sanctions specifically around this time. Compl. ¶¶ 23-24; *id.* at Ex. I.

The record does not contain information regarding what action the Army took in response to Ms. Musell's July 2016 letter and Plaintiff's Petition for Enforcement. Over a year later, in October 2017, the EEOC issued an order requiring the Army: (1) "To the extent it has not already done so, . . . reimburse Complainant's back pay, with interest, that it incorrectly deducted as interim earning but was moonlighting work"; (2) to determine "the appropriate amount of backpay, with interest, due Complainant" within 60 days following the order; (3) to "issue a check to the Complainant for the undisputed amount within sixty (60) calendar days of the date the Agency determines the amount it believes to be due"—if a dispute exists concerning the amount of back pay and/or interest owed; and (4) to submit a compliance report to the EEOC. Compl. ¶ 14; *id.* at Ex. C. The EEOC also ordered Plaintiff to "cooperate in the Agency's efforts to compute the amount of back pay and benefits due, and . . . [to] provide all relevant information requested by the Agency." *Id.*

The Army took no action. Compl. ¶ 15. The EEOC's October 2017 order did not come to the Army's attention until January 2018 when Plaintiff sought enforcement of the order. *Id.* at ¶

17; Tucker Decl. ¶ 2. In response, EEOC representative, Mr. Rodney Jenkins, issued a notice of non-compliance. Compl. ¶ 17; *id.* at Ex. D. The Army did not submit a response to the EEOC. Compl. ¶ 18.

Mr. Tucker did, however, contact a DFAS Office of General Counsel attorney who informed him the DFAS did not view the order as a directive "to do anything but ensure that we calculated his back pay correctly based [on] any new information he might submit." Tucker Decl. ¶ 18; *id.* at Ex. 21. The attorney added: "Unless he has documentation showing DFAS calculated the offset incorrectly because his job met the requirements of the regulation, we would not revise our back pay calculation." *Id.*

Following Mr. Tucker's return from military leave, he searched files for additional documentation that would satisfy DFAS, but did not locate any. Tucker Decl. ¶ 20. In late February 2018, Mr. Tucker sent a letter to Ms. Musell which stated that DFAS could not provide additional back pay without documentation verifying Plaintiff's moonlighting work prior to separation from the Army in 2010. *Id.* at ¶ 21; *id.* at Ex. 22. Ms. Musell replied that Plaintiff had already provided all required information. *Id.* at ¶ 22; *id.* at Ex. 23. She added: "There have been multiple orders since last October requiring the Army to respond, but the Army chose not to respond. There is now a final order." *Id.*

In April 2018, Ms. Musell sent a letter to Mr. Jenkins concerning the Army's alleged failure to comply with the prior EEOC orders. *See* Compl. ¶ 19; *see also id.* at Ex. E. Ms. Musell also provided Mr. Tucker with a copy of the letter. This letter omitted reference to the Army's request for documentation verifying moonlighting work.

In May 2018, Mr. Tucker spoke with Mr. Jenkins about Ms. Musell's refusal to provide the requested documentation. Tucker Decl. ¶ 23. Mr. Jenkins directed Mr. Tucker to send "a more definitive statement/request" to Ms. Musell. *Id.* at ¶ 24; *see id.* at Ex. 24. Mr. Tucker emailed Ms. Musell and explained that an affidavit from each employer where Plaintiff performed moonlighting work prior to his separation in 2010 would constitute sufficient documentation. Tucker Decl. ¶ 24; *id.* at Ex. 25. Mr. Tucker stated:

Case No.: 5:18-cv-06466-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

7

> To clarify, the agency needs Mr. Plaskett to at least provide an
> affidavit from each of the companies he worked for (preferably from
> a manager) that indicates he performed work for them in 2010 while
> employed by the Army. The time cards previously submitted only
> appear to cover pay periods in 2012 and 2013; if there were
> additional time cards showing he worked for each company in 2010,
> I do not have them. As recited in my February 26, 2018 letter, the
> reason the time cards alone are insufficient stems from the wording
> of 5 U.S.C. s. 5596(b) and the DoD Financial Management
> Regulation, DoD 7000.14-R, Volume 8, Chapter 6, paragraph
> 060505.C, which addresses an exception for offsetting outside
> earnings from back pay. If you submitted any such statements
> before, please re-submit them.

*Id.* Ms. Musell did not reply. Tucker Decl. ¶ 24. Also, in May 2018, the EEOC placed Plaintiff's Petition for Enforcement, Docket No. 0420180019 concerning the back pay issue on the docket. Compl. ¶ 20; *id.* at Ex. F.

In June 2018, Ms. Musell sent another letter to the EEOC, claiming that the Army "has refused to comply with all orders by the EEOC related to corrective action and still owes Mr. Plaskett back pay, with interest." Compl. ¶ 21; *id.* at Ex. G.

In July 2018, the EEOC granted Plaintiff's Petition for Enforcement No. 0420160037 relating to the issue of unpaid sanctions. Compl. ¶ 24; *id.* at Ex. I. The EEOC directed the Army to pay $7,012.50 in sanctions "for its failure to timely and fully produce discovery and comply with the AJ orders." *Id.* Also, in July 2018, the EEOC sent a compliance letter to the Army, directing the Army to submit a compliance report. Compl. ¶ 25.

Mr. Tucker submitted a Reply to the EEOC regarding Plaintiff's Petition for Enforcement, Docket No. 0420180019. Tucker Decl. ¶ 24; *id.* at Ex. 28. The Army asked the EEOC to deny Plaintiff's petition for enforcement of sanctions. *Id.* The Army also stated: "Further, we request that if the EEOC OFO's intent was to direct the payment of $21,020.01 in back pay plus interest, that it more clearly state so. If not, we request that Mr. Plaskett be required to either provide the requested documentation or admit that he did not, in fact, work a second job while employed as a federal employee in 2010 so that this case may be brought to a close."[3] Mr. Tucker noted that Mr.

---

[3] There is no information in the record regarding the current status of Petition for Enforcement, Docket No. 0420180019.

Case No.: 5:18-cv-06466-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

8

Plaskett "submitted time cards for employment held with three companies in 2012 and 2013, but failed to provide any evidence that he performed work for any of the three in 2010, while still employed as a federal employee." *Id.*

In October 2018, Plaintiff filed this action seeking $21,020.01 in back pay and $7,012.50 in sanctions. Compl. ¶¶ 33, 37; *see* Dkt. No. 1.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides that a party may seek dismissal of a suit for lack of subject matter jurisdiction. Fed. R. Civ. Proc. 12(b)(1). A Rule 12(b)(1) motion challenges a court's subject matter jurisdiction and may be either facial or factual. *Id.*; *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). When a Defendant makes a factual challenge, as in this case, the Court "may look beyond the complaint and need not presume the truthfulness of the plaintiff's allegations." *Johnson v. 1082 El Camino Real, L.P.*, Case No. 5:17-cv-01391-EJD, 2018 WL 1091267, at *1 (N.D. Cal. Feb. 28, 2018), *citing White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Also, "the party opposing the motion to dismiss must produce affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Johnson*, 2018 WL 1091267, at *1, *citing Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

## III. DISCUSSION

### A. This Court Lacks Jurisdiction Under the Mandamus Act Over Plaintiff's Claim for Writ of Mandamus Ordering Additional Back Pay.

The Mandamus Act provides that district courts have original jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *See Nova Stylings, Inc. v. Ladd*, 695 F.2d 1179, 1180 (9th Cir. 1983). The Supreme Court has ruled that "the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980), *citing Will v. United States*, 389 U.S. 90, 95 (1967); *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 382-85 (1953); *Ex parte Fahey*, 332 U.S. 258, 259 (1947); *Patel v. Reno*,

Case No.: 5:18-cv-06466-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
9

134 F.3d 929, 930 (9th Cir. 1998) (calling mandamus "an extraordinary remedy"); *see also Will v. United States*, 389 U.S. 90, 107 (1967) (regarding the writ as "among the most potent weapons in the judicial arsenal"). A plaintiff may not receive mandamus relief under Section 1361 unless "(1) the claim is clear and certain; (2) the official's or agency's 'duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available." *Agua Caliente Tribe of Cupeño Indians of Pala Reservation v. Sweeney*, 932 F.3d 1207, 1216 (9th Cir. 2019), *citing Patel*, 134 F.3d at 931.

The Back Pay Act, 5 U.S.C. § 5596(b)(1), authorizes back pay for an agency employee "who, on the basis of a timely appeal or an administrative determination . . . is found by an appropriate authority under applicable law, rule, regulation . . . to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee." 5 U.S.C. § 5596(b)(1). In calculating back pay, the agency must deduct any income that the employee earned "through *other employment* during that period." 5 U.S.C. § 5596(b)(1)(A)(i) (emphasis added). The Office of Personnel Management's regulations concerning back pay provide an exception for "additional" or "moonlight" employment. 5 C.F.R. § 550.805(e)(1). Specifically, the Code of Federal Regulations provide that when calculating deductions for back pay, "[d]o not count earnings from additional or 'moonlight' employment the employee may have engaged in while Federally employed (before separation) and while erroneously separated." 5 C.F.R. § 550.805(e)(1). Department of Defense ("DoD") Financial Management Regulation ("FMR") 7000.14-R, Volume 8, Chapter 6, Paragraph 060505.C[4] also carves out an exception for additional or "moonlight" employment. DoD FMR, 7000.14-R, Vol. 8, Ch. 6, Paragraph 060505.C. The DoD regulation provides as follows:

> **C. Exception for Additional or Moonlight Employment.** The only earnings from other employment that are not deducted from back pay are earnings from outside employment the employee already had before the period of wrongful suspension or separation.

---

[4] The May 2019 version of Chapter 6 numbers this exception as § 060405, not § 060505.

Case No.: 5:18-cv-06466-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
10

> For example, if an employee usually worked 20 hours at a second part-time job ('moonlighting') prior to separation from Government employment, and during the period of separation worked 40 hours at the outside job, then the amount representing the extra 20 hours worked would be offset against the back pay computation. To clearly establish whether the pay for outside employment increased substantially during the period of separation, the DoD should obtain a statement or affidavits from the employee covering his or her outside earnings.

*Id.* (original emphasis). The exception provides that income earned from "moonlight" employment, or "outside employment the employee already had before the period of wrongful suspension or separation," is not deductible from an agency's calculation of back pay. *Id.*

In *Kinkaid v. McDonald*, the District Court of the District of Columbia found that the "moonlighting" exception did not apply to petitioner's back pay calculation because petitioner initiated his outside employment after his separation from the U.S. Department of Veteran Affairs ("VA"). 208 F. Supp. 3d 212, 213, 216 (D.D.C. 2016), *appeal filed*, *Kinkaid v. Shulkin*, No. 16-5352 (Nov. 29, 2016). Petitioner received back pay from DFAS and reinstatement for improper removal from his position as a physician at the VA Medical Center. *Id.* at 213.

Here, as in *Kinkaid*, Plaintiff disputes the amount of back pay he received from DFAS in May 2014. *See id.* at 216. Plaintiff claims that the "moonlighting" employment exception applies to DFAS' calculation. But, per the DoD regulation, DFAS does not have the legal authority to apply the "moonlighting" employment exception without the requisite documentation. Plaintiff has not provided the necessary documentation to trigger the exception. And Plaintiff has not complied with the EEOC's October 2017 order requiring Plaintiff to "cooperate in the Agency's efforts to compute the amount of back pay and benefits due, and . . . [to] *provide all relevant information requested by the Agency*." *See* Compl. ¶ 14; *see also id.* at Ex. C (emphasis added). Without the requisite documentation, DFAS cannot verify Plaintiff's claimed "moonlighting" employment. Having failed to provide the requisite documentation to DFAS, Plaintiff's claim for back pay is not "clear and certain." Plaintiff has also failed to demonstrate that the Army has a duty which is "so plainly prescribed as to be free from doubt" to pay the disputed back pay because DFAS has not yet verified Plaintiff's claimed "moonlighting" employment. *See Aqua*

Case No.: 5:18-cv-06466-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
11

*Caliente*, 2019 WL 3676342, at *8, *citing Patel*, 134 F.3d at 931; *see also* Tucker Decl. ¶ 24.

Plaintiff contends that "[t]he remedy of mandamus is appropriate given the extraordinary and repeated violations of orders (eleven in total) by the Agency, and the Agency's obstinate insistence it is above the law and outside reach of the EEOC's enforcement orders." Dkt. No. 25. But, Plaintiff disputes neither the existence of the moonlighting regulations nor the DFAS and Army's interpretation of the regulations' requirements. Plaintiff argues instead that this court has mandamus jurisdiction over Plaintiff's claim for disputed back pay for essentially three reasons. First, Plaintiff claims that the Army "conceded it owed Plaintiff" the disputed back pay with interest. *Id*. Second, Plaintiff claims that the Army's delays in complying with the EEOC orders constitute a waiver of the Army's "right to contest" the disputed back pay amount. *Id.* Third, Plaintiff argues that laches bars the Army from disputing the amount of back pay allegedly owed because Plaintiff "failed to seek in a timely fashion the documents it now claims are necessary." *See id.* None of these arguments establish mandamus jurisdiction over Plaintiff's claim for disputed back pay.

First, the concession argument is unpersuasive. Although Mr. Hales stated in his 2014 email that Plaintiff's documentation supported his request for the back pay, Mr. Hales also made clear he was not the final decision maker. *See* Tucker Decl. ¶ 9; *see also id.* at Ex. 11. Rather, Mr. Hales said that ". . . we can send the *request* up to DFAS with the document *requesting* that he be reimbursed for pay deducted from his earnings from 'moonlighting' on non-duty days." *Id*. at Ex. 11 (emphasis added). Also, although the Army stated in its 2015 Response to Plaintiff's Petition for Enforcement that the Army had "approved" Plaintiff's request for back pay, this statement was made before the Army learned that DFAS required documentation verifying that Plaintiff engaged in moonlighting prior to his separation date.

Second, the Army did not waive its right to dispute the amount of back pay allegedly owed. "A waiver is an intentional relinquishment or abandonment of a known right or privilege." *Groves v. Prickett*, 420 F.2d 1119, 1125 (9th Cir. 1970) (internal citations omitted). To show that the Army waived its right to challenge the amount of back pay allegedly owed, Plaintiff must

Case No.: 5:18-cv-06466-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
12

demonstrate, at a minimum, that the Army's "conduct relied upon must be clear, decisive and unequivocal of a purpose to waive the legal rights involved." *Id.* at 1125-26, *citing United States v. Chichester*, 312 F.2d 275 (9th Cir. 1963). Plaintiff does not meet this burden because the Army requested the required documentation to verify "moonlighting" employment on several occasions. *See* Tucker Decl. ¶¶ 14, 21, 24. The Army did not "clear[ly], decisive[ly], and unequivocal[ly]" waive its right to dispute the amount of back pay owed. *See Groves*, 420 F.2d at 1125-26.

Third, laches does not bar the Army from disputing the back pay allegedly owed. Laches does not apply in this context because "[l]aches is an *equitable defense* that prevents a plaintiff, who 'with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights.'" *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950-51 (9th Cir. 2001) (internal citations and quotations omitted) (emphasis added).

Thus, Plaintiff has not established that this court has jurisdiction over his claim for the disputed back pay under the Mandamus Act, 28 U.S.C. § 1361.

### B. This Court Lacks Jurisdiction Under the APA Over Plaintiff's Claim for Writ of Mandamus Ordering Additional Back Pay.

A plaintiff may bring a claim under Section 706(1) of the APA "only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 525 U.S. 55, 64 (2004) (original emphasis). When plaintiff demonstrates that he or she has "a right to relief under the circumstances, it is the reviewing court's duty to 'compel agency action unlawfully withheld or unreasonably delayed'" per 5 U.S.C. § 706(1). *Alibeik v. Chertoff*, No. C-07-01938 EDL, 2007 WL 4105527, at *3 (N.D. Cal. Nov. 16, 2007), *citing Gelfer v. Chertoff*, No. C 06-06724 WHA, 2007 WL 902382, at *1 (N.D. Cal. March 22, 2007) (internal citations and quotations omitted). The APA provides that "[a]gency action made reviewable by statute and final agency action *for which there is no other adequate remedy in a court* are subject to judicial review." 5 U.S.C. § 704 (emphasis added).

As the Army points out, "Plaintiff had a remedy." Dkt. No. 27. Plaintiff's remedy is to provide the Army with documentation verifying "moonlighting" employment. *Id.* Plaintiff has

Case No.: 5:18-cv-06466-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
13

not provided such documentation. Plaintiff provided the Army with time cards for employment performed at three companies in 2012 and 2013. But, Plaintiff did not provide evidence that he worked for any of these companies prior to his separation from the Army in 2010. Tucker Decl. ¶ 24; *id.* at Ex. 28. Plaintiff claims the resume he submitted to the Army when he applied for the permanent position in 2010 demonstrates that he performed moonlighting work. Dkt. No. 25. The resume includes Plaintiff's bulldozing business under the Work Experience section. Musell Decl. ¶ 6; *id.* at Ex. E. This section notes: "Jeff Plaskett Bulldozing (1/01/1999 - Present) – Owner/Operator," a salary of $100.00 per hour, fifty hours per week, and duties. But, DFAS cannot use this resume to verify moonlighting employment prior to 2010 under the DoD regulation, which provides: "To clearly establish whether the pay for outside employment increased substantially during the period of separation, the DoD should obtain a statement or affidavits from the employee covering his or her outside earnings." DoD FMR, 7000.14-R, Vol. 8, Ch. 6, Paragraph 060505.C. Thus, this court lacks jurisdiction over Plaintiff's claim under the APA.

### C. This Court Lacks Jurisdiction Over Plaintiff's Claim for Writ of Mandamus Enforcing Monetary Sanctions.

This court lacks jurisdiction over Plaintiff's claim for a Writ of Mandamus enforcing the EEOC's issuance of monetary sanctions against the Army.

#### 1. Sovereign Immunity Precludes the EEOC From Awarding Monetary Sanctions Against the Army.

The doctrine of sovereign immunity prevents suits against the United States and its agencies unless Congress has waived sovereign immunity. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). "[A] clear statement from the United States waiving sovereign immunity, together with a claim falling within the terms of the waiver" is necessary for federal courts to have jurisdiction over suits against the United States. *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003). A waiver of sovereign immunity must be "unequivocally expressed." *Id.* An implied waiver of sovereign immunity is not permissible. *Id.*; *Lane v. Pena*, 518 U.S. 187,

Case No.: 5:18-cv-06466-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
14

192 (1996) (". . . A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied.") (internal citations omitted). Also, a waiver of sovereign immunity "must be construed strictly in favor of the sovereign." *United States v. Nordic Village*, 503 U.S. 30, 34 (1992), *quoting McMahon v. United States*, 342 U.S. 25, 27 (1951) (internal quotations omitted). Furthermore, "[a] court may impose money awards against the United States only under an express waiver of sovereign immunity." *United States v. Woodley*, 9 F.3d 774, 781 (9th 1993).

The EEOC imposed sanctions against the Army pursuant to 29 C.F.R. § 1614.109(f)(3). This regulation grants an AJ the authority to take certain actions "in appropriate circumstances" against a complainant, the agency against whom the complainant has filed a complaint, and its employees for "fail[ing] without good cause shown to respond fully and in timely fashion to an order of an administrative judge, or requests for the administrative file for documents, records, comparative data, statistics, affidavits, or the attendance of witness(es)." 29 C.F.R. § 1614.109(f)(3). Specifically, an AJ may:

> (i) Draw an adverse inference that the requested information, or the testimony of the requested witness, would have reflected unfavorably on the party refusing to provide the requested information;
>
> (ii) Consider the matters to which the requested information or testimony pertains to be established in favor of the opposing party;
>
> (iii) Exclude other evidence offered by the party failing to produce the requested information or witness;
>
> (iv) Issue a decision fully or partially in favor of the opposing party; or
>
> *(v) Take such other actions as appropriate.*

*Id.* (emphasis added).

This court faces a question of first impression in this circuit—whether the EEOC has the legal authority to grant monetary sanctions against the Army under the ADEA at administrative proceedings based on section 1614.109(f)(3). Only one federal case, which the Army cites, directly addresses the issue of whether the EEOC has the legal authority to issue monetary

Case No.: 5:18-cv-06466-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
15

sanctions against a federal agency under the ADEA. In *Arnold v. McHugh*, No. 15-210, 2016 WL 5661641, at *4-5 (E.D. Tex. Sept. 30, 2016), the Eastern District of Texas found that sovereign immunity precluded the EEOC from issuing monetary sanctions against the Army. *Id.* Plaintiff, a former Heavy Equipment Mechanic with the Army, filed an EEO complaint with the EEOC for racial discrimination. *Id.* at *1. The AJ concluded that the Army did not discriminate against plaintiff when the Army terminated his employment. *Id.* However, the AJ issued sanctions against the Army in the form of "reasonable discovery costs" and attorneys' fees for the Army's failure to investigate Plaintiff's complaint in a timely manner. *Id.* The Army refused to pay sanctions based on the argument that sovereign immunity precluded the EEOC from issuing monetary sanctions against the federal government. *Id.* Plaintiff then filed an action in federal court seeking enforcement of monetary sanctions against the Army. *Id.* at *2.

The court rejected plaintiff's various arguments that the court had subject matter jurisdiction over the action. First, plaintiff claimed that Congress "waived sovereign immunity for monetary sanctions in EEOC proceedings" based on the language in Section 2000e-16(b) of Title VII. *Id.* at *3. Section 2000e-16(b) provides that the EEOC has the authority to enforce the prohibition against discriminatory employment practices in the federal government by "issu[ing] such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under [Title VII]." *Id.*, citing § 2000e-16(b) (internal quotations omitted). Plaintiff "claim[ed] that this conclusion is required by *West v. Gibson*, 527 U.S. 212 (1999), which held that compensatory damages are an appropriate remedy for Title VII violations by federal agencies." *Id.* at *3. The court rejected plaintiff's argument, stating: *"West* held that compensatory damages were an appropriate remedy under § 2000e-16(b), but spoke nothing of monetary sanctions or of the EEOC's ability to issue such awards. Nor did *West* alter the sovereign immunity analysis . . ." *Id.* (internal citation omitted).

Second, plaintiff claimed that "the EEOC's inability to impose monetary sanctions on federal agencies" "undermine[s] Title VII's remedial scheme in the way that the Court in *West* found that an inability to award compensatory damages would." *Id.* at *4. The court rejected this

Case No.: 5:18-cv-06466-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
16

argument stating: "These sanctions are not remedial, as they can be awarded to parties who have not been discriminated against, and the EEOC has several tools other than monetary sanctions that it can use to keep agencies from disregarding its procedural orders." *Id.* (internal citation omitted).

Third, plaintiff claimed that the EEOC's consistent refusal to accept a sovereign immunity preclusion argument supported a finding of a waiver of sovereign immunity. *Id.* at *3-4. The court rejected this argument, stating: "The EEOC cannot waive the Federal Government's immunity through its regulations or its administrative proceedings." *Id.* at *4 (citation omitted). For these reasons, the court concluded that sovereign immunity precluded the court from enforcing monetary sanctions that the EEOC had issued at administrative proceedings. *Id.*

This court finds the reasoning in *Arnold* persuasive and concludes that section 1614.109(f)(3) is not an express waiver of sovereign immunity. The Eighth Circuit's decision in *Palmer* provides additional support for finding that sovereign immunity precludes the EEOC from awarding monetary sanctions. *Palmer v. Gen. Servs. Admin.*, 787 F.2d 300, 300-01 (8th Cir. 1986). In *Palmer*, the issue was whether federal courts were authorized to award attorney's fees to a federal employee who prevails at the administrative level on a claim of age discrimination brought under the ADEA. The Eighth Circuit held that the doctrine sovereign immunity "impose[d] an initial barrier" to the plaintiff's claim for attorney's fees. *Id.* at 301. The Eighth Circuit reasoned that the ADEA provision authorizing courts to award "such legal or equitable relief as will effectuate the purposes of [the ADEA]" did unequivocally express an intent to authorize an award of fees against the government. *Id.* at 302.

The Ninth Circuit's decision in *Woodley* further bolsters the Army's sovereign immunity argument. In *Woodley*, the court ordered the government to pay attorney's fees and costs as a sanction under Federal Rule of Civil Procedure 16(d)(2). *Id.* at 782. The Ninth Circuit held that Rule 16(d)(2) only provides a court with authority to "prescribe such terms and conditions as are just" to remedy a violation of a discovery order, and that this language was insufficient to constitute an express waiver of sovereign immunity. *Id.* at 781. The language of Rule 16(d)(2) is similar to 29 C.F.R. § 1614.109(f)(3)(v), which provides that an AJ shall "[t]ake such other

Case No.: 5:18-cv-06466-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

17

actions as appropriate" to remedy a violation of an AJ's order or requests for information. *See* 29 C.F.R. § 1614.109(f)(3).

Plaintiff cites various EEOC decisions which reject the Army's argument that sovereign immunity precludes the EEOC from awarding sanctions against the federal government and its agencies. *See e.g., Matheny v. Dep't of Justice*, EEOC DOC 05A30373, 2005 WL 1000149, at *6-9 (EEOC April 21, 2005); *Mathis v. Dep't of Navy*, EEOC DOC 0720080006, 2009 WL 3360160, at *3 n.3 (EEOC Oct. 8, 2009); *Waller v. Dep't of Transp.*, EEOC DOC 0720030069, 2007 WL 1661113, at *8-10 (EEOC May 25, 2007). In these decisions, the EEOC provides rationales to support its conclusion that the Commission has the legal authority to award monetary sanctions against the federal government and its agencies.

First, the EEOC finds that it has "independent authority, based in statute" to issue sanctions at an administrative proceeding. *Mathis*, 2009 WL 3360160, at *2. As support, the EEOC points to *West v. Gibson*, where the Supreme Court held that the EEOC has the legal authority "to award compensatory damages to complainants in the administrative process." *Matheny*, 2005 WL 1000149, at *8, *citing West v. Gibson*, 527 U.S. 212 (1999). In *West*, the Supreme Court found that "the term 'appropriate remedies' found in section 717 is not limited to remedies specifically set forth in Title VII." *Matheny*, 2015 WL 100149, at *8. Authority to award compensatory damages helps facilitate the EEOC's "remedial scheme" which "encourage[es] quicker, less formal and less expensive resolution of disputes within the Federal Government and outside of court." *Id.*, *citing West*, 527 U.S. at 219. By extension, according to the EEOC: "To deny the Commission the power to ensure compliance with its administrative process through the use of sanctions is to encourage the non-cooperation of agencies with the administrative process," thus undermining the EEOC's remedial scheme by "forcing complainants into court, which would, as the Court wrote, 'increase the burdens of both time and expense that accompany efforts to resolve hundreds, if not thousands, of such disputes each year.'" *Id.*; *see also Waller*, 2007 WL 1661113, at *9.

Case No.: 5:18-cv-06466-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
18

United States District Court
Northern District of California

Second, the EEOC cites "Commission precedent"—"long utiliz[ing] monetary sanctions as a tool to ensure full compliance with Administrative Judges' orders." *Id.* at *8. At oral argument, Ms. Musell reiterated a concern raised in Plaintiff's Opposition to Defendant's Motion to Dismiss: this court's decision to not enforce the EEOC's sanctions against the Army would set a precedent that government agencies can disobey the orders of AJs without consequence. *See* Dkt Nos. 25, 32.

Although Plaintiff and the EEOC opinions he cites raise thoughtful policy concerns, Plaintiff does not demonstrate that section 1614.109(f)(3) constitutes an "unequivocally expressed" waiver of sovereign immunity for monetary sanctions against the Army. *See White Mountain*, 537 U.S. at 472. Section 1614.109(f)(3) lacks "a clear statement" that the United States has waived sovereign immunity to permit the imposition of monetary sanctions against the Army in administrative proceedings. *See id.* Finding an implied waiver of sovereign immunity in section 1614.109(f)(3) would be impermissible. *See id.*; *see also Lane v. Pena*, 518 U.S. at 192. In the absence of a waiver of sovereign immunity, this court lacks jurisdiction to enforce monetary sanctions against the Army. *See id.* at 781.

### 2. This Court Lacks Jurisdiction Under the Mandamus Act Over Plaintiff's Claim for Writ of Mandamus Enforcing Monetary Sanctions.

This court also lacks jurisdiction under the Mandamus Act. Plaintiff's claim for relief is not "clear and certain" because sovereign immunity precludes the EEOC from imposing sanctions against the Army. *See Agua Caliente*, 2019 WL 3676342, at *8 (9th Cir. Aug. 7, 2019), *citing Patel*, 134 F.3d at 931; *see also Alibeik*, 2007 WL 4105527, at *2.

## IV. ORDER

For the reasons set forth above, Defendant's motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) is GRANTED. Because the Court has dismissed Plaintiff's claims for lack of subject matter jurisdiction under Rule 12(b)(1), it need not reach Defendant's challenges under Rule 12(b)(6).

Case No.: 5:18-cv-06466-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
19

All claims in the Complaint are DISMISSED WITHOUT LEAVE TO AMEND.

**IT IS SO ORDERED.**

Dated: September 10, 2019

EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cv-06466-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
20